```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF ALABAMA
                     SOUTHERN DIVISION
```

```
SANDRA D. LAMB,                      :
                                     :
     Plaintiff,                      :
                                     :
v.                                   :    CIVIL ACTION 07-0178-M
                                     :
MICHAEL J. ASTRUE,                   :
Commissioner of                      :
Social Security,                     :
                                     :
     Defendant.                      :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 18).  Oral argument was heard on September 24, 2007.  Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **REVERSED** AND that this action be **REMANDED** for further administrative actions not inconsistent with the Orders of this Court.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

Lamb was born October 23, 1954. At the time of the administrative hearing, Plaintiff was fifty-one years old, had completed eighteen months of accounting training after she completed her high school education (Tr. 212, 223), and had previous work experience as a bookkeeper, a business office manager, and a self-employed candymaker (Tr. 219-20). In claiming benefits, Lamb alleges disability due to thoracolumbar scoliosis with chronic pain, degenerative disc disease of the spine, and bilateral carpal tunnel syndrome (Doc. 13 Fact Sheet).

The Plaintiff filed protective applications for SSI and disability benefits on September 20, 2004 (Tr. 79-90). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that she was able to perform her past relevant work as a business office manager, self-employed

bookkeeper/tax preparer, and accountant (Tr. 26-35). Plaintiff requested review of the hearing decision (Tr. 24-25) by the Appeals Council, but it was denied (Tr. 3-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Lamb alleges that: (1) The ALJ did not properly consider the opinions and conclusions of an examining physician; (2) the ALJ improperly discredited her testimony; and (3) the ALJ improperly determined that she could perform a wide range of sedentary work (Doc. 13). Defendant has responded to—and denies—these claims (Doc. 15). The Court will now review the evidence of record.

An x-ray, taken on January 4, 1995, revealed that Plaintiff suffered from prominent scoliosis (Tr. 162).

Dr. Eric G. Becker, Doctor of Osteopathy specializing in family medicine, performed a consultative examination on January 14, 2005, noting that Plaintiff was alert, oriented, and cooperative (Tr. 166-69, 178). He noted mildly diminished breath sounds in Lamb's lungs. The doctor noted that Plaintiff had full strength in her hands and upper and lower extremities; her range of motion was unremarkable. Becker did note "a marked prominence of the right hemi thorax, increased with anterior thoracolumbar flexion, which is otherwise normal at 0-90 degrees" (Tr. 167). There was "palpatory tenderness along the left lower thoracic paraspinal" and mild degenerative changes throughout (*id.*). The

doctor characterized Lamb's scoliosis as moderately severe; he also noted that she had reversible airway disease, secondary to asthma and aggravated by her thirty years of smoking.

On April 21, 2005, Plaintiff was seen by Dr. Tim Revels, an Orthopedic, for increasing pain; he noted that she was alert, oriented, and in no acute distress (Tr. 190-92).  The doctor noted that her neck had supple, smooth range of motion though there was pain at the extremes of her range; he also noted pain with palpation and percussion in her thoracolumbar spine.  Revels noted carpal tunnel syndrome bilaterally and radiculopathy in her left lower leg.  On October 6, the doctor noted that an MRI had been performed which demonstrated degenerative disk disease and mild to moderate central and foraminal stenosis in the C4-7; Revels noted that Lamb suffered from pain which was radiating into the neck and right arm and hand which was worse than that which radiated into her low back and left leg (Tr. 190; *cf.* Tr. 194-96).  The Orthopedic recommended a C5-6 epidural block as well as a nerve study of the right arm and hand, both to be performed at Providence Victory Health.[1]

---

[1] Plaintiff testified that Victory Health was a low income clinic where she was able to see Dr. Revels and have an MRI performed for a fee of twenty dollars (Tr. 224).  Plaintiff's attorney has stated the following about Victory Health:  "To qualify financially for treatment at Victory Health Partners, a patient must have no form of private medical insurance, not be eligible for Medicaid or Medicare, and have a gross income less than three times the Federal Poverty Guidelines.  Patient fees are calculated on a sliding scale that is based on family size, income, and circumstances.  There is a $50 annual fee for the dispensary and patient assistance programs, but no charge for

Dr. Barbara C. Mitchell examined Plaintiff on March 2, 2006, noting that she was alert, oriented, and cooperative (Tr. 197-98).  The doctor noted "++ paraspinal muscle tenderness in [the] cervical area" and "+++ tenderness in the lumbosacral area;" Lamb also had "very limited lumbar flexion and extension to 30 degrees," "limited side to side movement," and decreased sensation in the left lower extremity (*id.*).  Dr. Mitchell's assessment was as follows:  cervical degenerative disc disease, cervical radiculopathy, lumbar degenerative disc disease, lumbar radiculopathy, thoracolumbar scoliosis with muscle spasm, and bilateral carpal tunnel syndrome (*id.*).

Mitchell also completed a physical capacities evaluation and a pain assessment form in which she indicated that Lamb was able to sit for two, stand for one, and walk for one hour at a time while able to sit for three, stand for two, and walk for two hours during an eight-hour day (Tr. 199-203).  The doctor also indicated that Plaintiff could lift and/or carry up to five pounds occasionally but never more than that; Lamb was totally restricted from pushing and pulling of arm and leg controls as well as fine manipulation bilaterally.  Dr. Mitchell found Plaintiff able to bend, crawl, and reach on an occasional basis,

---

medications dispensed through the programs.  *Victory Health Partners: How to Become a Patient*, available at http://216.71.15.58/wb/pages/how-to-become-a-patient.php" (Doc. 13, p. 6, n.4).

but never able to squat or climb.  She stated that Lamb would have to take breaks, for twenty-to-thirty minutes, every hour of an eight-hour workday and would have to have a job which allowed her to sit, stand, or walk at will; in addition, she would need to lie down two or three times a day for twenty minutes.  It was Dr. Mitchell's opinion that Plaintiff would miss more than three days a month because of her impairments.  The doctor also indicated that Lamb's pain was virtually incapacitating, that physical activity would increase her symptoms to the point that she would need bedrest, and that medication side effects would severely limit her ability to perform work-related activities.  Dr. Mitchell indicated that she had seen all other medical evidence of record in reaching her conclusions (*see* Tr. 203).

Plaintiff testified at the hearing before the ALJ that she lived in a house and that she had a tenant but that he didn't do any chores around the house (Tr. 213; *see generally* Tr. 204-32).  Lamb stated that her arms went numb when she sat down to a computer and at night when she lies down; additionally, sitting causes back pain which radiates down her left leg and into her ankle which intensifies when she stands up (Tr. 226-27).  Plaintiff takes Extra Strength Tylenol and Tylenol P.M. for her pain; though she has had Flextra[2] prescribed for her pain, it

---

[2]*Flextra DS* combines acetaminophen and phenyltoloxamine to treat aches and pains.  It can cause dizziness or drowsiness.  *See* http://www.drugs.com/mtm/flextra-ds.html

causes heart palpitations, so she tries to avoid using it (Tr. 214-15, 227-28).  Lamb said that she's had to limit her activities because of her pain, but that inactivity causes her to hurt as well (Tr. 228); she does her laundry only once or twice a month (Tr. 229).  All activities are more difficult for her including brushing her teeth, washing dishes, bathing, and the basic functions of sitting, standing, and sleeping (Tr. 228-30).

James Douglas Miller, Vocational Expert (hereinafter *VE*), testified that Lamb's past work as a general office manager, bookkeeper, budget accountant, and accounting clerk were all skilled, sedentary jobs as they are normally performed in the national economy (Tr. 232-36).  Plaintiff's work as a candy maker was considered to be skilled, medium-exertion work.

The ALJ summarized the findings of record and gave determinative weight to the reports of Drs. Becker and Revels as well as the testimony of the VE (Tr. 34).  The ALJ went on to state that he was giving no significant weight to the opinions of Dr. Mitchell "in that she only saw the claimant one time and her medical opinion is inconsistent with the other credible evidence of record" (*id.*).  The ALJ also found that Plaintiff's subjective complaints were not fully credible (*id.*).

Plaintiff's first claim is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of one of her examining physicians.  Lamb specifically

references the medical evidence presented by Dr. Mitchell (Doc. 13, pp. 13-21).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[3] *see also* 20 C.F.R. § 404.1527 (2007).

Plaintiff has argued that the ALJ is incorrect in his assessment of Dr. Mitchell for several reasons.  Lamb first notes that the ALJ rejected Mitchell's conclusions because she saw Plaintiff only once.  Lamb correctly points out that the ALJ gave credit to Dr. Becker's report, though he saw her only once as well (*see* Tr. 166-67).

Plaintiff also points out that Dr. Becker gave no indication that he had any other medical evidence to consider at the time of his examination while Dr. Mitchell apparently had all of the available evidence at her disposal (*see* Tr. 166-67; *cf.* Tr. 203).  Lamb argues that there is no way that Dr. Becker could have had the reports of Drs. Revels and Mitchell as they did not yet exist.  Plaintiff is correct in this argument as well.

Lamb also notes that Dr. Mitchell was the only physician who

---

[3]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

provided an opinion as to Plaintiff's abilities.  More specifically, though Drs. Becker and Revels examined Lamb, they gave no indication as to what she could actually do.  Mitchell's physical capacities evaluation provided that information.

Finally, Plaintiff argues that Dr. Mitchell's diagnoses were not inconsistent with those of the other physicians.  Lamb also points out that Mitchell was the last doctor of record to examine her, so her notes reflect the debilitation of her impairments over time.

The Court finds that Plaintiff's argument that Dr. Mitchell's diagnoses are consistent with the other medical evidence of record is correct.  The primary difference in Mitchell's records and those of the other doctors is that Dr. Mitchell was the only doctor[4] who provided an opinion as to Lamb's residual functional capacity.  The record before the Court does not reflect what Drs. Revels and Becker considered Plaintiff's abilities to be.

The Court is aware the the ALJ is responsible for determining a claimant's RFC.  20 C.F.R. § 404.1546 (2007).  Nevertheless, that determination must be supported by substantial

---

[4]The Court notes that a non-examining medical consultant provided an opinion as to Plaintiff's abilities (*see* Tr. 170-77).  The Court further notes, however, that the opinion of a nonexamining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).

evidence.  As the ALJ has rejected Dr. Mitchell's conclusions, the only medical evidence of record specifically addressing Lamb's abilities, the Court finds that the determination is not supported by substantial evidence.

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence.  Therefore, it is **ORDERED** that the action be **REVERSED** and **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing for the gathering of evidence regarding Plaintiff's residual functional capacity.  Judgment will be entered by separate order.

DONE this 25th day of September, 2007.

                                                s/BERT W. MILLING, JR.
                                                UNITED STATES MAGISTRATE JUDGE